UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
)
UNITED STATES OF AMERICA                )
                                        )
              Plaintiff,                )
                                        )        CIVIL ACTION
v.                                      )        NO. 00-CV-11977-DPW
                                        )
PRESIDENT AND FELLOWS                   )
OF HARVARD COLLEGE,                     )
ANDREI SHLEIFER,                        )
and JONATHAN HAY,                       )
                                        )
              Defendants.               )
_____)

## DEFENDANTS' MOTION TO LIMIT THE LENGTH AND SCOPE OF DAMAGES DISCOVERY

Defendants President and Fellows of Harvard College ("Harvard" or the "University") and Andrei Shleifer hereby move to limit the length and scope of damages discovery. Defendants specifically move to limit damages discovery, including expert discovery, to no more than three months. To so limit discovery will require a court order: (i) limiting the scope of the damages case to damages proximately caused by Shleifer's and Hay's contractually prohibited investments; and (ii) foreclosing the government from, *inter alia*, pursuing consequential damages.

The government concedes that "not all that [has gone] badly in Russia should be attributed to Shleifer and Hay." *See* United States' Preliminary Description of Expected Damages Evidence ("Gov't Damages Submission") at 28, a copy of which is attached hereto as Exh. A. Nevertheless, the government maintains that Shleifer's and Hay's personal investments in Russia, which at most totaled several hundred thousand dollars, have had catastrophic

consequences for which the government is entitled to damages. *Id.* at 5-7, 11-14, 22-32. Included among the consequences for which the government maintains Shleifer's and Hay's personal investments were a contributing cause are:

- Russia's "financial crisis of 1998," *id.* at 14;

- Certain undefined United States "national security" problems, *id.* at 23;

- A "long-term decline in the Russian economy that was far worse than the Great Depression," *id.* at 27;

- Significant drop-offs in both the "average life expectancy" and "birth rates" in Russia, *id.*;

- The "disastrous outcome in Russian economic and political and legal development in the 1990's," *id.* at 28; and

- "The pervasiveness of corruption and the lack of transparency, good corporate governance and a functioning rule of law" in Russia, *id.*

The government never places a dollar value on the parade of horrors it claims resulted from Shleifer's and Hay's investments, and for good reason: The alleged "damages" are incapable of calculation. The government should be estopped from seeking to recover these consequential damages because: (i) such damages were not pled at all, let alone with the specificity required by Federal Rule of Civil Procedure 9(g); (ii) the "damages" were not reasonably foreseeable by the parties at the time of the formation of the Cooperative Agreements; (iii) the "damages" are not the "natural, primary and probable consequence of the breach [of the Cooperative Agreements]," *Hendricks & Associates, Inc. v. Daewoo Corp.*, 923 F.2d 209, 214 (1st Cir. 1991) (internal citation and quotation marks omitted); and (iv) the "damages" are inherently speculative and not susceptible to calculation.

Of course, if the government is permitted to pursue its consequential damages theories, it will be impossible to conduct or complete adequate damages discovery within three months. The government knows this, and it has agreed with defendants to a discovery schedule that the parties propose should apply if the instant motion is denied.  The agreed-upon proposed schedule would require approximately twelve months for the completion of discovery and would push off the commencement of the damages trial until April 2006.  (A copy of the agreed-upon proposed schedule is attached hereto as Exh. C.)  Defendants maintain that further delay in resolving this case, which has been pending since September 2000, is unwarranted and unnecessary.  Damages discovery can and should be completed within three months with a trial to follow no later than the summer or fall of this year.

## PROCEDURAL BACKGROUND

Per a Scheduling Order dated September 9, 2004, and later modified on October 6, 2004 and November 5, 2004, this Court ordered: (i) the government to provide the defendants with "a preliminary statement of [its] theory of damages and [a] list of witnesses and substance of testimony"; (ii) the defendants to respond; (iii) the parties to meet regarding any issue raised by their damages statements, and to file a joint submission by January 7, 2005, in which, among other things, they would propose a damages discovery schedule.

In keeping with the Court's Order, on October 28, 2004, the government served defendants with its Damages Submission (*see* Exh. A hereto).  Defendants subsequently responded in a letter to the government dated December 22, 2004, a copy of which is attached hereto as Exh. B.  On January 4, 2005, the parties met in an effort to resolve their differences concerning the parameters and scope of damages discovery.  That meeting was unsuccessful in resolving all disputes.  Hence, this Motion.  (As noted above, however, the parties agreed upon a

proposed damages discovery schedule, which they propose should apply if this Motion is denied. That proposed schedule is attached as Exh. C.)

## **BURDEN OF PROOF**

It is the government's burden to prove *actual harm* proximately caused by Shleifer's and Hay's investments in order to recover damages.  This is true for the government's breach of contract claim against Harvard and its FCA claim(s) against Shleifer.  *See*, *e.g.*, *Ab-Tech Constr., Inc. v. United States*, 31 Fed. Cl. 429, 439 (1994); *Cooney Indus. Trucks, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 978 F. Supp. 391, 413 (D. Mass. 1997) ("[A] plaintiff is not entitled to have a breach of contract claim submitted to a jury on a generalized allegation that some unspecified contractual obligation was violated and in some unspecified way caused some kind of harm or damage . . . .").  As this Court noted in denying the government's motion for partial summary judgment as to damages: ". . . [W]e're dealing essentially with a breach of contract in the customary fashion.  You [the government] prove your damages."  Transcript of September 9, 2004 Hearing ("9/9/04 Tr.") at 3.

The government must prove its damages with specificity.  It is not sufficient merely to establish "some kind of harm or damage," *Cooney Indus.*, 978 F. Supp. at 413, that may have been linked in some way to Shleifer's or Hay's investments.  If the government is unable to prove *actual harm*, no damages may be awarded for breach of contract, and recovery under the FCA must be limited to a "civil penalty of not less than $5,000 and not more than $10,000" per false claim.  31 U.S.C. § 3729(a); *see also United States v. Advanced Tool Co.*, 902 F. Supp. 1011, 1017 (W.D. Mo. 1995) (government failed to present sufficient evidence concerning fair market value of defendants' tools, so court declined to award damages and limited government

to civil penalty); *Ab-Tech*, 31 Fed. Cl. at 434 (remedy limited to civil penalties because "no proof has been offered to show that the government suffered any detriment to its contract interest").

If the government were able to meet its burden of proving actual harm proximately caused by Shleifer's and Hay's investments, defendants would then have the burden of proof as to a *quantum meruit/valebat* offset for the value of benefits conferred upon the government under the Cooperative Agreements.  *See*, *e.g.*, *Landmark Land Co., Inc. v. FDIC*, 256 F.3d 1365, 1373 (Fed. Cir. 2001) ("[B]ecause the purpose of restitution is to restore the plaintiff to its status quo ante, the award to the plaintiff must be reduced by the value of any benefits that it received from the defendant under the contract.").[1]  Here, defendants *quantum meruit/valebat* evidence would be narrowly tailored to prove value offsetting any specific actual harm successfully proven by the government.  For instance, if the government were to prove that Shleifer's and Hay's investments proximately caused harm to antitrust policies in Russia, defendants would attempt to prove the specific merits and value derived from advice given by HIID's advisors concerning antitrust laws.  Of course, it will only be necessary for defendants to put on *quantum meruit/valebat* evidence if the government first meets its burden of proving actual harm.  The government's Damages Submission (*see* Exh. A hereto) makes clear, however, that the government will not be able to meet its burden.  The government's theories of damages are simply too amorphous and speculative, without the possibility for cure through discovery.  *See*, *e.g.*, *Wayne Investment, Inc. v. Gulf Oil Corp.*, 739 F.2d 11, 14 (1st Cir. 1984) ("To allow the appellant to proceed with discovery on the basis of these purely speculative allegations . . .

---

[1]   With regard to the FCA, "offset" is built into the statutory damages calculation.  *See*, *e.g.*, *United States v. Bornstein*, 423 U.S. 303, 316 n.13 (1976).  As explained by the Court in *Bornstein*, FCA damages "equal . . . the difference between the market value of the [goods/services the government] received and retained and the market value that the [goods/services] would have had if they had been of the specified quality."  *Id.*  Where, as here, defendants are able to demonstrate that the services received and retained by the government had substantial value, that value is necessarily offset from whatever harm the government may be able to prove.

would be to issue a license for a 'fishing expedition' in unchartered waters"); *Herring v. Delta Airlines, Inc.*, 894 F.2d 1020, 1024 (9th Cir. 1990) (barring futile discovery).

## THE GOVERNMENT'S THREE THEORIES OF "DAMAGES"

The government's Damages Submission identifies three theories of potential damages evidence and discovery: (i) *per se*, across-the-board taint; (ii) specific "corruption"; and (iii) "consequential" or "special" damages.

### 1.   The Government's *Per Se* Across-The-Board Taint Theory is Too Vague, and Has Already Been Rejected by This Court.

In its general across-the-board taint theory, the government claims that Shleifer's and Hay's investments and business activities in Russia tainted *all* the advice HIID's advisors gave to the Russian Federation, at least in part because of the alleged critical nature of transparency and honest services to the entire Harvard-USAID Russia Project.  Gov't Damages Submission at 6-11.  This theory represents a wholesale approach to damages and is precisely the "*per se*" approach that this Court has already rejected.  *See*, *e.g.*, 9/9/04 Tr. at 3.  As the Court has explained, "it's only if you [the government] take the theological view that, once tainted, the whole thing goes out that you can say they're not entitled to anything.  So you've got to give us some idea and give them some idea of what it is that you say the Government was damaged here, some basic theory of the Government's damage, and one that's [intelli]gible to everybody."  *Id.* at 36.

The government's general taint theory is not intelligible.  It is not susceptible to proof and, therefore, neither susceptible to discovery nor to a defense.  *Milazzo v. Sentry Ins.*, 856 F.2d 321, 322 (1st Cir. 1988) (*per curiam*) ("Discovery is not a 'fishing expedition'; parties must disclose some relevant factual basis for their claim before requested discovery will be allowed"); *Wayne Investment*, 739 F.2d at 14.  Defendants cannot reasonably be expected to defend against

a damages theory, unless the theory is articulable and articulated. *Cooney Indus.*, 978 F. Supp. at 413. As the government itself has previously stated, the everything-was-tainted theory is "impossible" to prove. *See, e.g.*, Memorandum of the United States as to Damages, Or in the Alternative, Partial Summary Judgment Motion as to Damages ("Gov't Damages Memo.") at 2, 18, 22. The amorphous and unarticulated quality of the government's "impossible" theory of damages renders it a theory that cannot and may not be pursued as part of damages discovery.

2. **Limited Discovery Concerning the Government's Theory Concerning Specific Areas of "Corruption" is Appropriate.**

The government's second theory of damages alleges, among other things, instances in which Shleifer and Hay allegedly diverted USAID funds to further their investments, and other instances where Shleifer and Hay allegedly gave "bad advice" because of their supposed interest in furthering their investments, as opposed to (and at the alleged expense of) helping the Russian free-market and democratic reformers. Gov't Damages Submission at 11-22. This theory is baseless and without merit. It is, however, a theory as to which the government is entitled to take discovery, at least to the extent that such discovery is limited to instances of alleged "corruption" causally linked to the investments and business activities that gave rise to the individual defendants' False Claims Act liability and Harvard's breach of contract liability.[2] Defendants do not seek to foreclose discovery as to the government's "corruption" theory of

---

[2] Curiously, the government's "corruption" theory of damages includes allegations concerning no-show jobs and double-dipping by certain Project employees. *See, e.g.*, Gov't Damages Submission at 16. For years, Harvard has told the government that if there is evidence to support these types of allegations, the government should simply provide the information to Harvard, and Harvard will promptly make the government whole. If, for instance, USAID funds were used to pay Project employees who did not do any actual work, or who did not even show up for work, Harvard will reimburse the government for those expenses without the need for wasteful discovery. It is not, however, clear how the government's allegations concerning no-show jobs, double-dipping, and the like, relate to the investment activity which gave rise to the individual defendant's False Claims Act liability and Harvard's breach of contract liability. The government is not entitled to take discovery in this lawsuit on any and all "damages" it may have sustained in connection with the Harvard-USAID Russia Project. Here, discovery must be limited to damages proximately linked to Shleifer's and Hay's investments.

damages.  Instead, we will await the end of discovery before filing an appropriate Rule 56

motion to prevent this theory from going to the jury.

###   3.   The Government's Consequential Damages Theory Is Patently Overreaching, and Any Discovery Concerning that Theory Would be a Waste of Time and Money.

Under the rubric of its "consequential" or "special" damages theory, the government

seeks "damages" for virtually every evil, both real and imaginary, that has befallen Russia during

the past decade.  Gov't Damages Submission at 22-32.  The government seeks damages for

everything from "a long term decline in the Russian economy that was far worse than the Great

Depression" to the fall in average life expectancy and lower birth rates in Russia.  *Id.* at 27.  *See

also id.* at 14, 28.  The government even goes so far as to suggest that Shleifer's and Hay's

investments caused "national security" problems for the United States.  *Id.* at 22-23.  If the

government is permitted to proceed with its consequential damages theory, damages discovery

would necessarily expand from what should be a narrow, targeted exercise to cover all things

Russian.

This Court has previously and correctly observed that discovery as to everything in

Russian history, and as to every branch of the United States government that houses any

information concerning Russia, would be inappropriate.  *See* 9/9/04 Tr. at 3 ("[Damages

discovery] is not going to consist of an extended seminar on the role of Russian-American

relations in the past century.  It's going to be quite limited . . ."); Transcript of June 4, 2001

Motion Hearing and Scheduling Conference ("6/4/01 Tr.") at 80 ("Whether or not the chiefs of

staff have larger strategic global ideas about the importance of private enterprise in the former

Soviet Union is a matter of profound indifference in this case.  So we're going to keep

[discovery] narrow").  If, however, the government is permitted to pursue its far-flung

consequential damages theories, the inappropriate would become the inevitable.  For instance, if the government is permitted to allege that Shleifer's and Hay's investments proximately caused "national security" problems for the United States, then defendants would be entitled to discovery regarding: whether the United States has had "national security" concerns related to Russia over the course of the past ten years; what those concerns have been; and what the government – *i.e.*, State Department, CIA, NSA, etc. – believes the causes of those concerns to have been.  The government's contention that Shleifer's and Hay's investments caused "national security" damages would entitle defendants to request, as part of discovery, confidential, secret and top-secret CIA, NSA and State Department documents pertaining to Russia, with all the attendant problems and delays that inevitably accompany such requests.  *See generally Maynard v. CIA*, 986 F.2d 547 (1st Cir. 1993) (dealing with array of difficult questions and problems presented by a FOIA request for CIA and other government documents).  The other catastrophic consequences – *e.g.*, falling birth rates and life expectancy, economic collapse, etc. – that the government now alleges were caused by Shleifer's and Hay's investments would also create a veritable Pandora's box of discovery problems.

If the government is permitted to pursue its consequential damages theories, it will be impossible for the parties to complete discovery in the three months envisioned by this Court.  *See* Scheduling Order, dated September 9, 2004, ¶ (4).  Indeed, it would likely prove impossible to complete discovery within one year.  Fortunately, there are at least four reasons to preclude the government from pursuing its consequential damages theory, let alone discovery related to that theory.

First, the government failed to allege consequential damages in its Complaint, let alone with the requisite specificity required by Federal Rule of Civil Procedure 9(g).[3]  This Court may and should "properly bar[] recovery of those items of 'special damages' which are not specifically pled."  *44 Liquor Mart, Inc. v. Rhode Island*, 940 F. Supp. 437, 439 (D.R.I. 1996).  Here, none of the government's alleged "special damages" have been pled at all, let alone with the requisite specificity.  *See* Compl., ¶¶ 1-138.  Furthermore, it is too late to amend the Complaint, and, in any event, this Court has already informed the government that it may not amend the Complaint.  *See* 6/4/01 Tr. at 22-23.

Second, the consequential damages detailed by the government were not reasonably foreseeable by Harvard and USAID at the time of the formation of the Cooperative Agreements.  As such, the damages are not recoverable.  *See*, *e.g.*, *Hendricks*, 923 F.2d at 213 (for consequential damages to be recoverable, they must have been "within the contemplation of the parties" at the time of contract formation) (quoting *John Hetherington & Sons, Ltd. v. William Firth Co.*, 210 Mass. 8, 21, 95 N.E. 961 (1911)); *Redgrave v. Boston Symphony Orchestra, Inc.*, 855 F.2d 888, 891-94 (1st Cir. 1988); *Prudential Ins. Co. v. United States*, 801 F.2d 1295, 1300 (Fed. Cir. 1986), *cert. denied*, 479 U.S. 1086 (1987).

Third, it is beyond the pale to suggest that the catastrophic consequences alleged by the government as "damages" were the "natural, primary and probable consequence of the breach"

---

[3]   There can be no doubt that the various consequential damages outlined by the government in Part 3 of its damages submission constitute "special damages" within the meaning of Rule 9(g).  After all, the consequential damages theory seeks to recover the amount of a loss that was allegedly produced by Harvard's failure to perform, not the market value of the promised performance.  Gov't Damages Submission at 22-32.  *See* 3 Dan B. Dobbs, *Law of Remedies*, § 12.1(1) (2d ed. 1993) ("Expectancy damages are sometimes measured by 'general damages' or market measures.  Such measures use the market value of the very thing promised, at the time of performance, as a basis for calculation. . . .  'Special damages' (consequential damages) are measured, not by the value of the promised performance alone but by the gains that the performance could produce for collateral reasons, or the *loss that is produced by the absence of such performance*.") (emphasis added).

of the Cooperative Agreements occasioned by Shleifer's and Hay's investments.  *Hendricks*, 923

F.2d at 214.  It simply cannot be seriously contended that the catastrophes catalogued by the

government – collapse of the Russian economy, fall in birth rates and average life expectancy,

etc. – were or could have been proximately caused by Shleifer's and Hay's personal investments.

It is inconceivable that discovery could prove otherwise.  *See Fennel v. First Step Designs, Ltd.*,

83 F.3d 526, 532-34 (1st Cir. 1996) (finding that the district court acted appropriately in

prohibiting further discovery where costs and burdens on parties were high and discovery sought

amounted to fishing expedition); *Herring*, 894 F.2d at 1024 (barring futile discovery).

Fourth, no monetary value can be placed on the consequential damages detailed by the

government, because the value is not "capable of ascertainment."  *Hendricks*, 923 F.2d at 217.

Put differently, the consequential damages outlined by the government are inherently speculative

and not reasonably foreseeable.  *See Redgrave*, 855 F.2d at 892-93.  As such, the government

should not be permitted to waste defendants' or the taxpayers' time and money by requiring

discovery.[4]

For all of these reasons, defendants should be spared the time and cost of damages

discovery with respect to the government's desired "consequential" damages.

## APPROPRIATE LIMITATIONS ON DAMAGES DISCOVERY

Damages discovery should be limited to harms to the United States that were, or at least

could have been, proximately caused by Shleifer's and Hay's contractually prohibited

---

[4]     It should be noted that permitting the government to pursue consequential damages in a joint trial would be unduly prejudicial to defendant Shleifer.  Fed. R. Evid. 403.  After all, consequential damages are impermissible under the False Claims Act, and Shleifer's liability is exclusive to the FCA.  *See Cook County, Illinois v. United States ex rel. Chandler*, 538 U.S. 119, 131 n.9 (2003) (noting that Congress adopted the treble damages provision of the FCA, in part, as a *substitute* for consequential damages) (emphasis added).

investments.[5]  If damages discovery is limited in this fashion, there is no reason why the parties

could not complete discovery within three months, with a trial on damages to follow shortly

thereafter.  Of course, so limiting discovery would require the parties to identify no more than

approximately ten fact witnesses each, and no more than three experts each.  Defendants are

prepared to limit themselves in this way, and see no reason why the government cannot and

should not do the same.

## CONCLUSION

For all of the aforementioned reasons, defendants' motion to limit the length and scope of

damages discovery should be allowed.  The parties should be ordered to conduct all damages

---

[5]   Discovery should also be permitted as to the *quantum meruit/valebat* evidence defendants may introduce, with the understanding that any such evidence would be narrowly tailored to offset or rebut specific instances of actual harm proven by the government.  Defendants expect that if necessary, *i.e.*, if the government meets its burden of proving actual harm, they will be able to introduce the following items of *quantum meruit/valebat* evidence:

- Achievement by Harvard of the specific deliverables identified in each of the Cooperative Agreements;
- Good faith and unbiased nature of all advice given by HIID's advisors on the Russia Project;
- Absence of any causal nexus between Shleifer's and Hay's alleged investments and the advice given by HIID's advisors, including Shleifer and Hay, to the Russian Federation;
- The fact that much of the advice provided by HIID during the Russia Project came from world-class professionals, who provided excellent and unbiased advice at a small fraction of market rates; and
- Specific contributions to Russia's free-market economy (*e.g.*, stock exchange; securities and exchange commission; vibrant and competitive mutual fund industry; vibrant and competitive specialized depository industry; etc.) resulting, at least in part, from defendants' work under the Cooperative Agreements.

discovery in a three-month period, and the government should be precluded from exploring or

pursuing either its *per se* taint theory of damages or its consequential damages theory.

<table>
<tr><td></td><td>Respectfully submitted,</td></tr>
</table>

|  |  |
|---|---|
| ANDREI SHLEIFER | PRESIDENT AND FELLOWS OF HARVARD COLLEGE |
| By his attorneys | By its attorneys |
| _/s/ Robert L. Ullmann_ | _/s/ David J. Apfel_ |
| Robert L. Ullmann | Paul F. Ware, Jr., P.C. (BBO# 516240) |
| Elizabeth H. Cleary | David J. Apfel (BBO# 551139) |
| NUTTER McCLENNEN & FISH, LLP | Roberto M. Braceras (BBO# 566816) |
| World Trade Center West | GOODWIN PROCTER LLP |
| 155 Seaport Boulevard | Exchange Place |
| Boston, MA  02110-2604 | Boston, MA  02109 |
| (617) 439-2262 | (617) 570-1000 |
| _/s/ Benjamin E. Rosenberg_ | Robert W. Iuliano |
| Benjamin E. Rosenberg (admitted *pro hac vice*) | Elizabeth P. Seaman |
| Adam B. Rowland (admitted *pro hac vice*) | HARVARD UNIVERSITY |
| DECHERT LLP | Office of the General Counsel |
| The Chrysler Building | Massachusetts Hall, Harvard Yard |
| 405 Lexington Avenue | Cambridge, MA  02138 |
| New York, NY  10174 | (617) 495-1280 |
| (212) 973-0111 |  |

Dated:  January 7, 2005

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(A)(2)

I, David J. Apfel, hereby certify I conferred with counsel for the government in a good faith effort to resolve or narrow the issues raised in the above Motion, but we were unable to reach an agreement.

_/s/ David J. Apfel_
David J. Apfel