UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>HARVARD UNIVERSITY, et al.<br>Defendants. | Civil Action No. 00-11977-DPW |

## UNITED STATES' AND JONATHAN HAY'S AGREEMENT FOR JUDGMENT

In accordance with the terms of the Civil Settlement Agreement (Settlement Agreement) (copy attached) between the United States and Jonathan Hay, Jonathan Hay hereby agrees to the entry of judgment against him in accordance with the Court's rulings on Summary Judgment, which judgment, the United States and Hay agree, will be satisfied provided that Hay makes the payments set forth in the Civil Settlement Agreement attached hereto (the "Settlement Agreement"). The parties further agree that at such time as Hay has made the payments necessary to satisfy his obligations in full under the Settlement Agreement, the judgment against him will be satisfied and, if the Court agrees, may be converted to a dismissal with prejudice as to the claims against Hay in accordance with the terms of the Settlement Agreement.

The parties respectfully request that the Court reopen this matter for the entry of an order in the form of the proposed order attached.

Respectfully submitted,

UNITED STATES OF AMERICA

_____
Sara M. Bloom, AUSA
U.S. Attorney's Office
Suite 9200
One Courthouse Way
Boston, MA 02210
(617) 748-3265

JONATHAN HAY

_____
Lawrence S. Spiegel
Skadden, Arps, Slate, Meagher & Flom
4 Times Square
NY, NY 10036-6522
(212) 735-4155

Alicia J. Bentley
Sara McLean
U.S. Department of Justice
Commercial Litigation Branch
P.O. Box 261
Ben Franklin Station
Washington, DC 20044
(202) 616-9854
Dated:

# SETTLEMENT AGREEMENT

**I.  PARTIES**

This Settlement Agreement (Agreement) is entered into between the United States of America, acting through the United States Department of Justice and on behalf of the United States Agency for International Development (USAID) (collectively the United States); and Defendant Jonathan Hay (Hay) (Defendant) (hereafter referred to as the Parties), through his authorized representative.

**II.  PREAMBLE**

A.  As a preamble to this Agreement, the Parties agree to the following:  From 1992 to May 1997, Hay was an employee of the Harvard Institute of International Development, an unincorporated division of Harvard University, which administered two cooperative agreements the (Cooperative Agreements) in Russia that were funded by USAID (Russia Project).  Hay was a manager of the Russia Project and performed his duties primarily in Moscow.

B.  The United States contends that it has certain civil claims, as specified in Paragraph 3 below, against Hay for making and/or participating in certain investment and business activities in Russia during the period from 1992 to 1997, in violation of the terms of the Cooperative Agreements.  In particular, the government's contentions include the following:

    a.  The cooperative agreements contained and incorporated various conflict of interest policies, which prohibited those who worked on the Russia Project from making investments and doing business in Russia.

    b.  In or about July 1994, Hay transferred funds to Andrei Shleifer (Shleifer), the Project Director, to be invested with Shleifer's money in Russian oil stocks.

    c.  In 1995, Hay invested $20,000 in a mutual fund which made investments in Russia.

    d.  In or about late 1995 or early 1996, Shleifer, Hay, Hay's then girlfriend now wife Elizabeth Hebert (Hebert), and Shleifer's wife Nancy Zimmerman (Zimmerman),  and others assisted in the creation, promotion, licensing, registration, and financing of a mutual fund management

company (Pallada) and the First Russian Specialized Depository (FRSD), which provided support services to Pallada and others.

  C. Hay disputes certain of the contentions of the United States.

  D. The United States is entering into this Agreement with Hay based on his representations as to his financial inability to pay a judgment that would fully satisfy the United States.

  E. On or about September 26, 2000, the United States filed a civil action against Hay, Hebert, The President and Fellows of Harvard University, Shleifer, and Zimmerman entitled <u>United States v. the Presidents and Fellows of Harvard College, et al.</u> (D. Mass. No. 00–CV–11977) (Civil Action) for, *inter alia,* violations of the False Claims Act (FCA), 31 U.S.C. § 3729, *et seq.* On or about June 25, 2004, the district court granted the United States' motion for summary judgment against Hay and held that Hay had violated the FCA. The conduct alleged in the United States' Complaint in the Civil Action, will hereinafter be referred to as the "Covered Conduct."

  F. In addition to the claims alleged against Hay in the Civil Action, the United States contends also that it has certain administrative claims, as specified in Paragraph 3 below, against Hay for engaging in the Covered Conduct.

  G. This Agreement is neither an admission of liability by Defendant nor a concession by the United States that its claims are not well founded.

  H. To avoid the delay, uncertainty, inconvenience, and expense of protracted litigation of the above claims, the Parties reach a full and final settlement pursuant to the Terms and Conditions below.

## III. TERMS AND CONDITIONS

  1. <u>Initial Payment by Hay</u>:  Within thirty days of the signing of this Agreement, Hay will pay $50,000 to the United States. Within 180 days of the Effective Date of this Agreement, Hay will pay an additional $225,000 to the United States. Within 365 days of the Effective Date (Year One) of this Agreement, Hay will pay an additional $225,000 to the United States. These three payments constitute the Initial Payment. Hay agrees to pay the Initial Payment by electronic funds transfer pursuant to written instructions to be provided by the United States Department of Justice.

  2. <u>Future Payments by Hay</u>:  In addition to the Initial Payment, Hay agrees to make the following additional payments to the Government under this Agreement:

      a. <u>Net After Tax Income Payment</u>:  In the event that Hay does not make the Exit Payment described below in any year, Hay agrees to pay the United States a portion of his net after-tax income (NATI), under the following schedule.  Hay agrees to be obligated to make NATI payments to the United States for eleven years following Year One (unless and until an Exit Aggregate Payment is made).  The obligation to make these payments begins at the beginning of Year 3 (i.e. on the second anniversary of the Effective Date of the Agreement and based upon Year 2 Income) and continues through Year 12 (with payment to be made on each anniversary of the Effective Date of the Agreement, (unless and until an Exit Aggregate Payment is made).  NATI, for purposes of this Agreement, shall include:

   (1) Total wages and salaries, less any tax withholding or estimated tax payments, but before any pre-tax items such as a retirement plan or health savings account;
   (2) Dividend and interest income;
   (3) Realized Capital Gains, net of realized capital losses;
   (4) Business Income (Schedule C) net of business expense (with no offset for depreciation);
   (5) Rental Income (Schedule E), with no offset for depreciation;
   (6) Other after tax income;
   (7) Inheritance, gifts, or forgiveness of debt (other than debts to a family member or to Skadden, Arps, Slate Meagher & Flom LLP);
   (8) Tax Refunds from all taxing authorities; and
   (9) Cash value of shares, options, or any other investment instrument, or any business ownership or interest received.

Unless Hay has already made an Exit Aggregate Payment, the percentage of Hay's NATI which must be paid to the Government in years 3 through 12 is set forth in the following schedule:

| <u>Hay's Gross Income</u> | <u>Percentage of NATI Due to the United States</u> |
|---|---|
| Under $150,000 | 30% of his NATI |
| $150,000 – $199,999 | $50,000 |
| $200,000 and up | $50,000 plus 50% of NATI above $150,000 |

In order to confirm gross and net after tax income, Hay shall provide copies of his and Hebert's tax returns, all forms filed with any and all taxing authorities, both domestic and foreign; and annual Department of Justice Financial Statement of Debtor forms to the office of the United States Attorney for the District of Massachusetts, Attn: AUSA Sara Bloom at the end of each calendar year.

      b. <u>Exit Aggregate Payment Option</u>:  Hay will have the option, but not

the obligation, to pay an Exit Aggregate Payment, which ranges between $1 million in total payments by the third anniversary of the signing, and $2 million in Total Payments by the tenth anniversary of the signing. (Total Payments includes all payments made to the United States under this Agreement, including, but not limited to, the Initial Payment and NATI payments). Payment of the exit payment in the given year would result in the complete satisfaction of Hay's obligations under the settlement agreement and would release him from the obligation of paying additional NATI payments. The exit payment schedule is set forth below.

| Year (Measured from the Effective Date of the Agreement) | Exit Payment |
| --- | --- |
| 3 | $1 million |
| 4 | $1.25 million |
| 5 | $1.5 million |
| 6 | $1.6 million |
| 7 | $1.7 million |
| 8 | $1.8 million |
| 9 | $1.9 million |
| 10 | $2 million |

        c.      Hay will agree not to accept any indemnification, loan, gift or other form of economic payment from Harvard, or any person or entity acting on behalf of Harvard, in connection with satisfying his financial obligations under the Agreement. Subject to Paragraph 9 below, he does not waive his right to assert claims against any person or entity, should any individual or entity file claims against Hay in connection with the Covered Conduct.

        3.      Release by the United States: Subject to the exceptions in Paragraph 4 below, in consideration of the obligations of Defendant set forth in this Agreement, conditioned upon Hay's full payment of the Settlement Amount (whether by Exit Aggregate Payment or otherwise), and subject to Paragraph 13 below (concerning bankruptcy proceedings commenced within 91 days of the Effective Date of this Agreement), the United States (on behalf of itself, its officers, agents, agencies, and departments) agrees to release Hay from any civil or administrative monetary claim based on the Covered Conduct that the United States has or may have under the False Claims Act, 31 U.S.C. §§ 3729-3733; the Civil Monetary Penalties Law, the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812; or the common law theories of payment by mistake, unjust enrichment, disgorgement, breach of contract, fraud, breach of fiduciary duty, fraudulent inducement, aiding and abetting or civil conspiracy, or any other statute or common law theory creating causes of action for civil damages or civil penalties which the Civil Division of the United States Department of Justice has actual and present authority to assert and compromise pursuant to 28 C.F.R. Part O, Subpart I, §0.45(d) (2003). This release of Hay is not intended to and shall not release HIID or Harvard, Hay's former employer, or any other person or entity.

    a. <u>Judgment on Liability</u>: Without Hay's making or implying any admission of liability, Hay agrees to entry of a judgment against him on liability pursuant to the Court's Order granting summary judgment against him, in accordance with subsection b below.

    b. <u>Satisfaction of Judgment</u>: Upon the United States' receipt of an Exit Payment or at the completion of the term of the NATI payments and full satisfaction of all terms of this Agreement, Hay may request of the Court, and the government will not oppose, that a satisfaction of the judgment be entered in favor of him, but not for the benefit of any other party in the civil action, and that the case thereafter be dismissed as to him with prejudice.

    4. <u>Administrative Claims</u>: In consideration of the obligations of Hay set forth in this Agreement, conditioned upon Hay's full payment of the Settlement Amount, and subject to Paragraph 13 below (concerning bankruptcy proceedings commenced within 91 days of the Effective Date of this Agreement or any payment under this Agreement), USAID agrees to release and refrain from instituting, directing, or maintaining any administrative action seeking debarment from USAID's programs (as defined in 22 C.F.R. Part 208) against Hay, except as reserved in Paragraph 5 below, and as reserved in this Paragraph.  Nothing in this Paragraph precludes USAID from taking action against entities or persons, or for conduct and practices, for which civil claims have been reserved in Paragraph 5 below.

    a. <u>Voluntary Debarment</u>: In compromise and settlement of the rights of USAID to debar and/or exclude Hay pursuant to 22 C.F.R. Part 208, Hay agrees to be debarred and/or excluded under this regulatory provision by USAID, for a period of five years. Such exclusion shall have government-wide effect and shall have all the collateral effects of a formal debarment by USAID pursuant to 22 C.F.R. 208.  This exclusion applies regardless of who submits the claims or other request for payment.  Violation of the conditions of the exclusion may result in criminal prosecution, the imposition of civil monetary penalties and assessments, and an additional period of exclusion.  Hay waives any further notice of the exclusion and agrees not to contest such exclusion either administratively or in any state or federal court.  This debarment shall commence upon the Effective Date of this Agreement.  Hay agrees that the Government can disseminate, both inside the Government and to the general public, Hay's exclusion to whatever degree it deems appropriate.

    5. <u>Excluded Claims</u>: Notwithstanding any term of this Agreement, specifically reserved and excluded from the scope and terms of this Agreement as to any entity or person (including Hay) are the following:

    a. Any civil, criminal, or administrative liability arising under Title 26, U.S. Code (Internal Revenue Code);

    b. Any criminal liability;

   c. Except as explicitly stated in this Agreement, any administrative liability, including mandatory debarment or exclusion from federal programs;

   d. Any liability to the United States (or its agencies) for any conduct other than the Covered Conduct;

   e. Any liability based upon such obligations as are created by this Agreement;

   f. Any liability of any corporation, including any corporation of which Hay was an officer and/or employee.

  6. <u>Financial Statements</u>:  Hay has provided sworn financial disclosure statements (Financial Statements) to the United States and the United States has relied on the accuracy and completeness of those Financial Statements in reaching this Agreement.  Hay has provided by letter dated August 3, 2005 an update setting forth aggregate changes to certain of his assets (the "Update").  Hay warrants that the Financial Statements are complete, accurate, and current as of the date prepared.  In the event the United States learns of asset(s) in which Hay had an interest at the time of this Agreement which were not disclosed in the Financial Statements or in the Update, or in the event the United States learns of any misrepresentation by Hay on, or in connection with, the Financial Statements and the Update, and in the event such nondisclosure or misrepresentation changes the estimated net worth set forth on the Financial Statements by $75,000 or more (excluding changes in market value for any disclosed assets), the United States may at its option: (a) rescind this Agreement and file suit or reinstate its suit based on the Covered Conduct; or (b) let the Agreement stand and collect the payments as set forth in Paragraph 2 of the Agreement plus one hundred percent (100%) of the value of the net worth of Hay previously undisclosed (excluding changes in market value for any disclosed assets).  The United States agrees that to the extent that Hay has provided information as to the value of any real estate or other assets based upon a valid appraisal, such a valid appraisal will be sufficient to establish correctness of the valuation for the purposes of this Settlement Agreement.

  7. <u>Statute of Limitations, Etc.</u>:  In the event that the United States, pursuant to Paragraph 6 above, opts to rescind this Agreement, Hay agrees not to plead, argue or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel or similar theories, to any civil or administrative claims which (a) are filed by the United States within 120 calendar days of written notification to Hay that this Agreement has been rescinded, and (b) relate to the Covered Conduct, except to the extent that such a claim was valid and existed as of September 26, 2000, and was not the subject of any prior waiver of statute of limitations.

  8. <u>Double Jeopardy/Excessive Fines Clauses Waiver</u>:  Hay waives and will not assert any defenses Hay may have to any criminal prosecution or administrative action relating to the Covered Conduct that may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the Constitution, or under the Excessive

Fines Clause in the Eighth Amendment of the Constitution, this Settlement Agreement bars a remedy sought in such criminal prosecution or administrative action. Nothing in this paragraph or any other provision of this Agreement constitutes an agreement by the United States concerning the characterization of the Settlement Amount for purposes of the Internal Revenue laws, Title 26 of the United States Code.

       9.      <u>Releases By Hay</u>:  Hay fully and finally releases the United States, its agencies, employees, servants, and agents from any claims (including attorney's fees, costs, and expenses of every kind and however denominated) which Hay has asserted or could have asserted, either now or in the future, against the United States, its agencies, employees, servants, and agents, related to the Covered Conduct and the United States' investigation and prosecution thereof.

      10.     <u>Unallowable Costs</u>:  Hay agrees to the following:

      a.      Unallowable Costs Defined: that all costs (as defined in the Federal Acquisition Regulations) incurred by or on behalf of Hay, his present or former officers, directors, employees, shareholders, and agents in connection with the following shall be "unallowable costs" on government contracts:

      (1)     the matters covered by this Agreement,

      (2)     the United States' audit(s) and civil and any criminal investigation(s) of the matters covered by this Agreement,

      (3)     Hay's investigation, defense, and corrective actions undertaken in response to the United States' audit(s) and civil and any criminal investigation(s) in connection with the matters covered by this Agreement (including attorney's fees),

      (4)     the negotiation and performance of this Agreement,

      (5)     the payment Hay makes to the United States pursuant to this Agreement and any payments that Hay may make to relators, including costs and attorneys fees, and

      b.      <u>Future Treatment of Unallowable Costs</u>:  These unallowable costs shall be separately determined and accounted for by Hay, and Hay shall not charge such unallowable costs directly or indirectly to any contracts with the United States.

      c.      <u>Treatment of Unallowable Costs Previously Submitted for Payment</u>:  Hay further agrees that within 90 days of the Effective Date of this Agreement he shall identify to any Government agency any unallowable costs (as defined in this Paragraph) included in payments previously sought from the United States, including, but not limited to,

payments sought, or payment requests already submitted, by Hay. Hay agrees that the United States, at a minimum, shall be entitled to recoup from Hay any overpayment plus applicable interest and penalties as a result of the inclusion of such unallowable costs on previously-submitted requests for payment.

        d.     Nothing in this Agreement shall constitute a waiver of the rights of the United States to audit, examine, or re-examine Hay's books and records to determine that no unallowable costs have been claimed in accordance with the provisions of this Paragraph.

        11.    Beneficiaries: This Agreement is intended to be for the benefit of the Parties only. The Parties do not release any claims against any other person or entity, and specifically do not release any other party to the Civil Action, the President and Fellows of Harvard College, Andrei Shleifer, Elizabeth Hebert or Nancy Zimmerman.

        12.    Financial Solvency: The Parties warrant that, in evaluating whether to execute this Agreement, they (a) have intended that the mutual promises, covenants, and obligations set forth constitute a contemporaneous exchange for new value given to Hay, within the meaning of 11 U.S.C. § 547(c)(1); and (b) conclude that these mutual promises, covenants, and obligations do, in fact, constitute such a contemporaneous exchange. Further, the Parties warrant that the mutual promises, covenants, and obligations set forth herein are intended and do, in fact, represent a reasonably equivalent exchange of value which is not intended to hinder, delay, or defraud any entity to which Hay was or became indebted, on or after the date of this transfer, all within the meaning of 11 U.S.C. § 548(a)(1).

        13.    Bankruptcy: If, within 91 days of the Effective Date of this Agreement or of any payment made hereunder, Hay commences, or a third party commences, any case, proceeding, or other action under any law relating to bankruptcy, insolvency, reorganization, or relief of debtors, (a) seeking to have any order for relief of Hay's debts, or seeking to adjudicate Hay as bankrupt or insolvent; or (b) seeking appointment of a receiver, trustee, custodian, or other similar official for Hay or for all or any substantial part of Hay's assets, Hay agrees as follows:

        a.     Hay's obligations under this Agreement may not be avoided pursuant to 11 U.S.C. §§ 547 or 548, and Hay will not argue or otherwise take the position in any such case, proceeding, or action that: (1) Hay's obligations under this Agreement may be avoided under 11 U.S.C. §§ 547 or 548; (2) Hay was insolvent at the time this Agreement was entered into; or (3) the mutual promises, covenants, and obligations set forth in this Agreement do not constitute a contemporaneous exchange for new value given to Hay.

        b.     If Hay's obligations under this Agreement are avoided for any reason, including, but not limited to, through the exercise of a trustee's avoidance powers under the Bankruptcy Code, the United States, at its sole option, may rescind the releases in this Agreement, and bring any civil and/or administrative claim, action, or proceeding against Hay for

the claims that would otherwise be covered by the releases provided in Paragraphs 3-4. Hay agrees that (1) any such claims, actions, or proceedings brought by the United States (including any proceedings to debar and/or exclude Hay from participation in USAID's contract or other Federal programs) are not subject to an "automatic stay" pursuant to 11 U.S.C. § 362(a) as a result of the action, case, or proceeding described in the first clause of this Paragraph, and that Hay will not argue or otherwise contend that the United States' claims, actions, or proceedings are subject to an automatic stay; (2) that Hay will not plead, argue, or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel, or similar theories, to any such civil or administrative claims, actions, or proceeding which are brought by the United States within 120 calendar days of written notification to Hay that the releases herein have been rescinded pursuant to this Paragraph, except to the extent such defenses were available as of the September 26, 2000; and (3) the United States has an allowed claim against Hay in the amount of $2 million.

        c.    Hay acknowledges that his agreements in this Paragraph are provided in exchange for valuable consideration provided in this Agreement.

        14.    <u>Legal Fees</u>:  Each Party to this Agreement shall not hold the other responsible for, or seek to collect from the other any of the legal and other costs incurred in connection with this matter, including the preparation and performance of this Agreement.

        15.    <u>Voluntary Agreement</u>:  Hay represents that this Agreement is freely and voluntarily entered into without any degree of duress or compulsion whatsoever, and that Hay understands his right to advice of counsel concerning this Agreement.

        16.    <u>Governing Law</u>:  This Agreement is governed by the laws of the United States.  The Parties agree that the exclusive jurisdiction and venue for any dispute arising between and among the Parties under this Agreement shall be the United States District Court for the District of Massachusetts.

        17.    <u>Complete Agreement</u>:  This Agreement constitute(s) the complete agreement between the Parties.  This Agreement may not be amended except by written consent of the Parties.

        18.    <u>Authority to Sign Agreement:</u>  The individuals signing this Agreement represent and warrant that they are authorized to execute this Agreement.  The United States signatories represent that they are signing this Agreement in their official capacities and that they are authorized to execute this Agreement.

        19.    <u>Counterparts</u>:  This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same agreement.

20. <u>Successors-In-Interest</u>: This Agreement is binding on Hay's successors, transferees, heirs, and assigns.

21. <u>Public Disclosure</u>: All Parties consent to the United States' and Hay's disclosure of this Agreement, and information about this Agreement, to the public.

22. <u>Effective Date</u>: The "Effective Date" of this Agreement shall be the date of signature of the last signatory to the Agreement. Facsimiles of signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

THE UNITED STATES OF AMERICA

DATED: BY: _____
Sara Bloom
Assistant United States Attorney
for the District of Massachusetts

DATED: BY: _____
Alicia J. Bentley
Sara McLean
Trial Attorneys
Commercial Litigation Branch
Civil Division
U.S. Department of Justice

DATED:_____ BY: _____
Diane Perone
Office of the General Counsel
United States Agency for International Development

DATED:_____ BY: _____
Michael F. Walsh
Director, Office of Acquisition and Assistance USAID
1300 Pennsylvania Ave., N.W.
Washington, D.C. 20523

20. <u>Successors-In-Interest</u>: This Agreement is binding on Hay's successors, transferees, heirs, and assigns.

21. <u>Public Disclosure</u>: All Parties consent to the United States' and Hay's disclosure of this Agreement, and information about this Agreement, to the public.

22. <u>Effective Date</u>: The "Effective Date" of this Agreement shall be the date of signature of the last signatory to the Agreement. Facsimiles of signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

THE UNITED STATES OF AMERICA

DATED: 8/3/05        BY: _____
                         Sara Bloom
                         Assistant United States Attorney
                         for the District of Massachusetts

DATED: 8/3/05        BY: _____
                         Alicia J. Bentley
                         Sara McLean
                         Trial Attorneys
                         Commercial Litigation Branch
                         Civil Division
                         U.S. Department of Justice

DATED:_____        BY: _____
                         Diane Perone
                         Office of the General Counsel
                         United States Agency for International Development

DATED:_____        BY: _____
                         Michael F. Walsh
                         Director, Office of Acquisition and Assistance USAID
                         1300 Pennsylvania Ave., N.W.
                         Washington, D.C. 20523

- 10 -

22. <u>Effective Date</u>: The "Effective Date" of this Agreement shall be the date of signature of the last signatory to the Agreement. Facsimiles of signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

THE UNITED STATES OF AMERICA

DATED: _____          BY: _____
                              Sara Bloom
                              Assistant United States Attorney
                              for the District of Massachusetts


DATED: _____          BY: _____
                              Alicia J. Bentley
                              Sara McLean
                              Trial Attorneys
                              Commercial Litigation Branch
                              Civil Division
                              U.S. Department of Justice


DATED: 3 August 2005      BY: _____/s/_____
                              Diane Perone
                              Office of the General Counsel
                              United States Agency for International Development


DATED: _____          BY: _____
                              Michael F. Walsh
                              Director, Office of Acquisition and Assistance USAID
                              1300 Pennsylvania Ave., N.W.
                              Washington, D.C. 20523

DATED:           BY: _____
                                          Sara Bloom
                                          Assistant United States Attorney
                                          for the District of Massachusetts


DATED:           BY: _____
                                          Alicia J. Bentley
                                          Sara McLean
                                          Trial Attorneys
                                          Commercial Litigation Branch
                                          Civil Division
                                          U.S. Department of Justice


DATED:_____ BY: _____
                                          Diane Perone
                                          Office of the General Counsel
                                          United States Agency for International Development


DATED: Aug 1, 2005    BY: _/s/ Michael F. Walsh_____
                                          Michael F. Walsh
                                          Director, Office of Acquisition and Assistance USAID
                                          1300 Pennsylvania Ave., N.W.
                                          Washington, D.C. 20523

DATED: BY: _____
Jonathan Hay

DATED: BY: _____
Lawrence Spiegel
Skadden Arps et al.
Counsel for Jonathan Hay

DATED:　　　　　BY: _____
　　　　　　　　　　　Jonathan Hay

DATED:　　　　　BY: _____
　　　　　　　　　　　Lawrence Spiegel
　　　　　　　　　　　Skadden Arps et al.
　　　　　　　　　　　Counsel for Jonathan Hay

08/03/2005　Case 1:00-SKADDEN ARPS W 91Document 823 Filed 08/05/05 Page 17 of 17　NO.794　P14

- 11 -